**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | Criminal No. 18-0081 |
| v. | OPINION |
| **ALBERT CARAZOLEZ,** | |
| Defendant. | |

**HAYDEN, DISTRICT JUDGE**

Before the Court is defendant Albert Carazolez's ("Defendant") emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion").[1] (D.E. No. 68 ("Def. Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See United States v. Barner*, 656 F. App'x 600, 602 (3d Cir. 2016). For the following reasons, the Court DENIES the Motion.

**I.    Background**

On October 11, 2019, Defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute a controlled substance. (D.E. No. 52 ("Guilty Plea")). Specifically, Defendant admitted to arranging deliveries of various amounts of heroin, cocaine, and fentanyl at various

---

[1] Defendant initially filed a *pro se* motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. No. 66). Shortly thereafter, Defendant's counsel filed a notice of appearance and assumed representation of Defendant. (D.E. No. 67). On June 25, 2020, Defendant, through his counsel, filed the instant Motion, which is characterized as a "supplemental motion for reduction of sentence." (D.E. No. 68). Because *pro se* litigants have no right to "hybrid representation," Defendant's *pro se* motion is denied as moot. *See United States v. Turner*, 677 F. 3d 570, 578 (3d Cir. 2012).

places around the country.[2] (Guilty Plea Tr. at 29: 6–30:18). Based on a total offense level of 33, criminal history category of III, the applicable guideline range was 168 to 210 months' imprisonment. (D.E. No. 62 ("Sentencing Tr.") at 5:12–20). However, after considering the relevant factors in 18 U.S.C. § 3553(a), submissions by counsel, the final presentence report, and arguments made at the hearing, the Court sentenced Defendant to 60 months of imprisonment and five years of supervised release. (*See* D.E. No. 63 ("Final Judgment") at 2–3).

Defendant now moves for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that the COVID-19 pandemic and his medical conditions create extraordinary and compelling reasons for his release from imprisonment. (*See generally* Def. Mov. Br.). Pursuant to the Court's Order, the Government submitted an opposition to the Motion on July 27, 2020 (D.E. No. 71 ("Gov. Opp. Br.")), and Defendant replied on August 3, 2020 (D.E. No. 72 ("Def. Reply Br.")). This Opinion follows.

**II.     Legal Standards**

Once a term of imprisonment has been imposed, the Court may only modify it under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that, in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are

---

[2] The amounts of the controlled substances involved were "at least five kilograms or more of a mixture or substance containing cocaine, at least one kilogram of a mixture or substance containing heroin, and at least 400 grams of a mixture or substance containing fentanyl." (D.E. No. 61 ("Guilty Plea Tr.") at 28:5–9).

>> applicable, if it finds that-
>>> (i) extraordinary and compelling reasons warrant such a reduction;
>>> [. . .]
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).  The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary or compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the Section 3553(a) factors.  *United States v. Brummett*, No. 6:07-0103, 2020 WL 1492763, at *2 (E.D. Ky. Mar. 27, 2020) (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018)).

**III.    Analysis**

The Court first addresses two threshold issues.  First, a court may consider a defendant's motion for compassionate release only if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [( "BOP" )] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  At Defendant's sentencing hearing, the Court recommended to the BOP that Defendant be designated at the Federal Correctional Institution at Lompoc, California ("FCI Lompoc"), where he would be closer to home.  (*See* Final Judgment at 2; Sentencing Tr. at 31:17–19).   The BOP apparently adopted the Court's recommendation and designated Defendant to FCI Lompoc, but Defendant has remained at Monmouth County Correctional Institution ("MCCI") since the Court sentenced him on October 25, 2019.  (Def. Mov. Br. at 1–2; *see also* Gov. Opp. Br. at 1; D.E. No. 74-1, Def. Ex. A at 2 (ECF

pagination)). On May 8, 2020, Defendant made a request for compassionate release to the warden at FCI Lompoc. (Def. Mov. Br. at 4; *see also* D.E. No. 74-4, Def. Ex. D). On July 18, 2020, a senior BOP attorney informed Defendant that FCI Lompoc could not assess Defendant's compassionate release request because he was not housed at that facility. (Def. Mov. Br. at 5; D.E. No. 74-5, Def. Ex. E). Defendant also made the same compassionate release request with MCCI. (Def. Mov. Br. at 5; D.E. No. 74-6, Def. Ex. F at 3 (ECF pagination)). On May 19, 2020, MCCI responded that it has no authority over the term of Defendant's incarceration or to process his compassionate release request because Defendant is a federal inmate. (*See* Def. Mov. Br. at 5; D.E. No. 74-6, Def. Ex. F at 2). Based on the foregoing, Defendant argues that he has satisfied the statutory exhaustion requirement (Def. Mov. Br. at 7–8), and the Government agrees (Gov. Opp. Br. at 4). The Court agrees that the Motion is properly before the Court for consideration pursuant to § 3582(c)(1)(A). *See United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020).

Second, the Government argues that, because Defendant essentially seeks a "transfer from one location of incarceration (MCCI) to another (his residence)," the Court has no authority to issue such transfer or direct the BOP to place a defendant in a specific place of incarceration. (*Id.*). The Court agrees with the Government that the Court has no authority to transfer or direct BOP to transfer Defendant. As set forth above, § 3582(c)(1)(A) gives the Court authority only to "***reduce***" the Defendant's "***term*** of imprisonment." (emphases added). And "only the [BOP] has the actual authority to designate the place of incarceration." *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993); *see also United States v. Miles*, No. 11-0581, 2020 WL 1989290, at *1 n.2 (S.D.N.Y. Apr. 27, 2020). However, pursuant to the plain language of § 3582(c)(1)(A), the Court can reduce Defendant's term of imprisonment to time served and impose a period of home confinement as a condition of supervised release. *See* 18 U.S.C. § 3582(c)(1)(A) (stating that the

4

court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)"); *see also United States v. Davidson*, No. 16-0139, 2020 WL 4877255, at *21 n.15 (W.D. Pa. Aug. 20, 2020) (stating that courts "do have authority under § 3582(c)(1)(A) to modify a defendant's term of imprisonment such that the remaining portion of the defendant's in-custody term is substituted for a period of supervised release with the condition of home confinement"). This appears to be the relief Defendant seeks, which the Government does not take issue with. (*See* Def. Mov. Br. at 23 (seeking to add "a period of home confinement as a condition of supervised release"); D.E. No. 72 ("Def. Reply Br.") at 8–10; Gov. Opp. Br. at 11 (arguing that the Court has no authority to grant the relief sought if the Court were "to read Carazolez's motion as a request to order BOP to place him on home confinement")).

Regardless of how Defendant characterizes the relief sought, the parties agree that the Court must consider whether extraordinary and compelling reasons justify release and whether such release would comply with the Section 3553(a) factors.[3] (Def. Mov. Br. at 8–27; Gov. Opp. Br. at 6–11). Based on these considerations, the Court denies the Motion.

### A. Extraordinary and Compelling Reasons for Reduction[4]

Defendant bases his argument on Black's Law Dictionary's definitions of "extraordinary"

---

[3] Before granting a motion for compassionate release, the Court must also evaluate dangerousness pursuant to 18 U.S.C. § 3142(g). *Brummett*, 2020 WL 1492763, at *2; U.S.S.G. § 1B1.13. Neither party specifically addresses this issue. However, as discussed below, because the Court denies the Motion based on no showing of extraordinary and compelling reasons and an analysis of the 3553(a) factors, it need not address dangerousness.

[4] The Sentencing Commission's policy statements governing "extraordinary and compelling" reasons for compassionate release include a catchall provision that allows for "other" extraordinary and compelling reason "*[a]s determined by the Director of the [BOP]*." U.S.S.G. § 1B1.13, Application Note 1(D) (emphasis added). Courts are thus faced with the issue of whether a court—rather than the BOP—can evaluate what constitutes extraordinary and compelling reasons. The Court need not weigh in on this issue in this case, however, because the parties do not dispute that the Sentencing Commission's policy statement applies where, as here, the motion for compassionate release was presented to the Court by the prisoners. (*See* Gov. Opp. Br. at 5 n.1). In any event, the Court finds that even if it has the authority to evaluate Defendant's arguments under the catchall provision, as discussed in detail below, Defendant has not demonstrated compelling and extraordinary reasons for release.

and "compelling need," and argues that neither MCCI, the prison he is currently located at, nor FCI Lompoc, the facility he is designated to, is capable of sufficiently protecting him from the COVID-19 pandemic. (Def. Mov. Br. at 11–13; Def. Reply Br. at 4–7). According to Defendant, this, coupled with his age, gender, his underlying medical conditions, and the fact that Defendant is "3,000 miles away from his family in California," constitutes extraordinary and compelling reasons for compassionate release. (Def. Mov. Br. at 15–17; Def. Reply Br. at 5). The Government, on the other hand, does not dispute that Defendant suffers from the alleged medical conditions; rather, it disputes that these conditions put Defendant at a higher risk of severe complications if he were to contract COVID-19. (Gov. Opp. Br. at 6). The Government further argues that MCCI has undertaken "sweeping measures and aggressive actions" to prevent the spread of COVID-19, which are sufficient to mitigate Defendant's medical concerns related to the pandemic. (*Id.* at 8–9). Finally, the Government argues that Defendant fails to establish that he would be safer in California if he were released and placed in home confinement. (*Id.* at 10).

Third Circuit precedent issued in the early months of the pandemic has made clear that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Thus, the Court must conduct an individualized inquiry of this Defendant to determine whether COVID-19 in conjunction with his alleged underlying medical conditions, and the conditions at the facility in which he is housed, constitute an extraordinary and compelling reason for release.

Defendant's arguments based on his medical conditions are two-fold. He first argues that his health conditions—namely, Barrett's disease, hypertension, high cholesterol, and prediabetes,

6

coupled with his gender, male, and age, 52—expose him to a higher risk of serious illness from COVID-19. (Def. Mov. Br. at 15–17). Next, Defendant argues that, should he be infected with COVID-19 or have a sudden flare up of his Barrett's disease, he would not be able to care for himself, a circumstance warranting relief pursuant to the Sentencing Commission's policy statement. (*Id.* at 17 (citing U.S.S.G. § 1B1.13, Application Note 1(A)(ii))). The Government acknowledges that due to the pandemic, chronic conditions that would not have previously constituted an extraordinary and compelling reason may be reasonably found to meet that standard. (Gov. Opp. Br. at 8). Nevertheless, the Government contends that none of Defendant's medical conditions places Defendant on the CDC's list of people who are at higher risk for severe illness from COVID-19. (*Id.*). The Court agrees.

Per Congressional directive, the Sentencing Commission issued a policy statement, which provides, in relevant part, that extraordinary and compelling reasons exist when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A)(ii)(I). Defendant argues that, as a 52-year-old male with Barrett's disease, hypertension, high cholesterol, and prediabetes, he runs a high risk of serious illness or even death if he contracts COVID-19. (Def. Mov. Br. at 15–17). The only reference to the severity of Defendant's medical conditions, however, is that he had a flare up of his Barrett's disease years ago, which "caused him to withdraw from the conspiracy" that he is convicted of. (Def. Mov. Br. at 18). Such general allegations of medical condition, without the necessary specificity, are insufficient to establish the "rare circumstances" that would justify a grant of compassionate release, which is "an exceptional remedy the court does not grant lightly." *See United States v. McKinnon*, No. 03-0251, 2020 WL

7

4530737, at *4 (M.D. Pa. Aug. 6, 2020).

Indeed, a review of the medical records submitted by Defendant indicates that his medical conditions are currently under control. Defendant is prescribed with Simvastatin (Zocor) for his hyperlipidemia, and his cholesterol is monitored at least every 90 days. (D.E. No. 75-2 at 17, 23 & 28–29[5]). He also received bland diet for his Barrett's disease, which he never complained about or received treatment for while incarcerated at MCCI. (*See, e.g.*, *id.* at 18). According to the most recent medical reports from October 17, 2019, January 16, 2020, and April 17, 2020, Defendant's hyperlipidemia is consistently considered "stable" (*id.* at 17, 23 & 28) and his dorsal pedalis pulses, used to evaluate diabetics and hypertension, have repeatedly been reported as "normal" (*id.* at 15, 21 & 26). Moreover, as the Government points out, Defendant's health conditions, including his age and gender, do not place him on the CDC's list of people who are at higher risk for severe illness from COVID-19. *See* CDC, *People with Certain Medical Condition*.[6] Defendant's hypertension is the only condition that the CDC indicates "might" expose people to an increased risk of severe illness from COVID-19. *Id.*

Defendant further points to a publication in the Journal of the American Medical Association ("JAMA"), which reported that of the 5,700 patients in New York City who were hospitalized with COVID-19, 56.6% had hypertension. (Def. Mov. Br. at 16)[7]. However, the

---

[5] Unless otherwise specified, citations to Defendant's medical records refer to the pagination generated by the Court's Electronic Case Filing system.

[6] The CDC website is available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated August 14, 2020) (last visited August 28, 2020) (hereinafter "CDC Guideline").

[7] The Journal of the American Medical Association article is Safiya Richardson, MD, MPH; Jamie S. Hirsch, MD, MA, MSB; Mangala Narasimhan, DO; et al, Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area, JAMA, available at https://jamanetwork.com/journals/jama/fullarticle/2765184.

JAMA article was published on April 22, 2020, before the CDC updated its guidance on June 25, 2020 and removed hypertension from the list of conditions that put a patient at an increased risk, categorizing it instead as a condition that "might" be associated with an increased risk. The Court is unpersuaded that Defendant meets his burden of demonstrating that he is "suffering from serious physical or medical condition" even in the context of COVID-19.

The record also shows that MCCI's preventative measures have been effective in limiting the spread of the COVID-19 in the facility.[8] The Government submitted the declaration of Captain Victor Iannello—the Administrative Captain at MCCI—which describes the COVID-19 policies and procedures that are in place and the current status of the outbreak at the facility. (D.E. No. 71-1 ("Innello Decl.")). In particular, the Innello Declaration states that (i) all staff are required to wear an N95 mask or equivalent at all times while inside the facility, except when they are eating in the designated break area; (ii) a maximum of 22 inmates are allowed to come out of their cells at any given time; (iii) all inmates are provided with surgical masks and are required to wear them and practice social distancing whenever they exit their cells; (iv) medical screening of every inmates occur at least once per day; (iv) symptomatic inmates are quarantined in a negative pressure cell in MCCI infirmary, and asymptomatic roommates of such inmates are quarantined in separate housing units; (vi) new inmates are accepted after medical screening and are quarantined for 24 days; and (vii) social and legal visits are suspended. (*Id.* ¶ 11). Because of the foregoing preventative measures, as of July 22, 2020, there were only two inmates who have tested positive for COVID-19. (Gov. Opp. Br. at 9).

Defendant does not dispute any of the statements in the Innello Declaration but

---

[8] While Defendant argues that both MCCI and FCI Lompoc are incapable of sufficiently protecting him from contracting COVID-19, the parties appear to agree that it is unlikely that Defendant will be transferred to FCI Lompoc during the global pandemic. (Def. Mov. Br. at 26; *see* Gov. Opp. Br. at 8–10). Accordingly, the facility where the conditions are relevant for this Motion is MCCI, the facility where Defendant is housed.

nevertheless contends that, while MCCI has taken "commendable" actions to prevent and mitigate the spread of COVID-19, the facility "is not immune to COVID-19" because of asymptomatic transmission and low testing rates. (Def. Mov. Br. at 13–14; Def. Reply Br. at 4–5). Defendant further compares the numbers of positive cases and death in Springville, California to the corresponding numbers in Monmouth County, and argues that he has less of a chance contracting COVID-19 in California than at MCCI. (Def. Reply Br. at 5). This argument is unconvincing. The epidemiology in the lager community at Monmouth County does not sufficiently inform Defendant's risk of contracting the virus while he is incarcerated at MCCI, especially in light of the effectiveness of MCCI's containment efforts to date. While the Court is mindful that asymptomatic transmission can occur undetected, at this juncture Defendant's argument about his heightened risk of contracting COVID-19 while incarcerated at MCCI is speculative.

Accordingly, based on the Defendant's underlying medical issues and the current conditions at MCCI, the Court finds that Defendant has not shown that extraordinary or compelling reasons warrant release.

### B. Section 3553(a) Factors

Without extraordinary and compelling reasons for release, the Court's inquiry could end here. Nevertheless, the Court's conclusion is also supported by an analysis of the Section 3553(a) factors. The applicable Section 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the

>>defendant; and
>
>>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a); *United States v. Brown*, No. 07-0019, 2020 WL 2466081, at *4 (D.N.J. May 13, 2020). And "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a).

The sentencing court evaluated each of these factors at Defendant's sentencing. As to the nature and circumstances of the offense, the sentencing court determined that the offense is "a most serious offense." (Sentencing Tr. at 22:14–17). Indeed, Defendant was involved in a "very sophisticated conspiracy" that had connections to the Mexican cartel, and Defendant allowed his trucks to be used to transfer "kilos and kilos and kilos of drugs." (*Id.* at 21:12–22:13). The sentencing court also determined that specific and general deterrence are "most certainly at issue" and considered many aspects of Defendant and his life, including his academic achievement when he was in high school, his relationships with his family, his medical conditions, such as the Barrett's Esophagus that is at issue in this Motion. (*Id.* at 26:25–30:3). The sentencing court went through Defendant's criminal history and stated that it was unsure whether Defendant really respected the law. (*Id.* at 8:9–9:7, 25:24–26:2 & 29: 10–19). Ultimately, however, the sentencing court recognized Defendant's "assistant in various matters" that "have protected the public" and granted a downward variance and imposed a term of imprisonment of 60 months, significantly below the 168 to 210 months guideline range. (*Id.* at 26:19–24 & 30:8–11).

To further reduce Defendant's sentence undermines some of the factors that the sentencing court considered and still hold true today—namely, the seriousness of the offense, the need to promote respect of the law, and necessity for specific and general deterrence. (Sentencing Tr. at 21:12–22:13, 25:24–26:2 & 26:8–10; ); *see United States v. Hammond*, No. 18-0184, 2020 WL

11

2126783, at *3 (W.D. Pa. May 5, 2020) (explaining that the COVID-19 pandemic did not justify a further reduction of defendant's sentence); *United States v. Mortensen*, No. 11-0095, 2020 WL 2549970, at *2 (D. Nev. May 19, 2020) (denying motion for release because, although defendant's law abiding lifestyle led to a downward variance at sentencing, "the seriousness of his conviction and the events surrounding it" now outweighed those considerations); *Brown*, 2020 WL 2466081, at *4 (denying motion for compassionate release where cutting defendant's term of imprisonment in half "would certainly fail to reflect the seriousness of his violations"). Accordingly, an analysis of the 3553(a) factors also warrants denying Defendant's Motion. *Alexander*, 2020 WL 2507778, at *5 (concluding that "granting defendant's motion for compassionate release would be wholly inappropriate under the Section 3553(a) factors").

**IV.   Conclusion**

For the foregoing reasons, Defendant's motion is DENIED. An appropriate Order accompanies this Opinion.

*s/ Katharine S. Hayden*
**Katharine S. Hayden, U.S.D.J.**
